**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO.: 23-bk-51228 |
| MARK KOVAL | : | |
| Debtor. | : | CHAPTER 13 |
| | : | |
| | : | JUDGE JOHN E. HOFFMAN JR. |

---

| | | |
|---|---|---|
| KARTHIK VENKATESAN     v | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| Vs. | : | Adv. Pro. No. |
| | : | |
| MARK KOVAL | : | |
| | : | |
| Defendant, | : | |
| | : | |
| And | : | |
| | : | |
| 614 CUSTOM HOMES, INC., | : | |
| | : | |
| Defendant.    ` | : | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
AND OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO SECTION 523
OF THE UNITED STATES BANKRUPTCY CODE**

Plaintiff Karthik Venkatesan ("Venkatesan" or "Plaintiff") for his Complaint against Defendants Mark Koval ("Koval" or "Defendant") and 614 Custom Homes Inc. ("614") (Koval and 614 collectively "Defendants") (all collectively the "Parties" each individually a "Party") allege as follows:

**JURISDITION & VENUE**

1.  This is an adversary proceeding in which the Plaintiff-Creditor, pursuant to Bankruptcy Code § 523(a)(2) and (6), is objecting to the discharge of the debt owed to the Creditor by a chapter 7 bankruptcy

Debtor. Thus, this Complaint addresses a core bankruptcy matter. Therefore, subject matter jurisdiction is proper in this Court.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1342, and to the extent applicable 1367, because this case involves the interpretation of a federal law.

3. Federal law affords this Court authority to grant Plaintiff's declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and the Court's exclusive jurisdiction over core bankruptcy matters. Also, see Fed. R. Civ. P. 57.

4. Plaintiff is unaware of any pending state litigation on these matters. However, this matter does involve a default judgment attained by Plaintiff Venkatesan against Defendant Koval in the Franklin County Court of Common Pleas, Case No. 22 CV 003172.

5. This case involves an actual case or controversy, specifically a dispute as to Plaintiff's rights relative to his default judgment attained against Defendant Koval.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (d), because: 1) Plaintiff and Defendant both reside in this District; 2) Defendant's primary place of business is in this District; and 3) "a substantial part of the events or omissions giving rise to all Plaintiff's claim occurred" in this District.

7. All parties reside in Franklin County Ohio, all real estate involved in this matter is located within Franklin County Ohio, and all material events alleged in this Complaint occurred in Franklin County Ohio. Therefore, personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §1391(b).

8. The Court has supplemental jurisdiction over any of Plaintiff's claims made pursuant to the statutes of the State of Ohio because those claims are so related to federal bankruptcy law claims as to form part of the same case or controversy.

**PARTIES & RELEVANT PERSONS**

9. Plaintiff Venkatesan is a resident of Franklin County, Ohio.

10. Defendant/Debtor Mark Koval is a resident of Franklin County, Ohio.

11. 614 Custom Homes Inc. is an Ohio corporation. Upon information and belief, Plaintiff states that this corporation is owned solely by Defendant Mark Koval.

## **FACTUAL BACKGROUND**

1. Plaintiff restates and incorporates by reference herein the preceding paragraphs as though fully rewritten herein.

2. Defendant 614 Custom Homes is in the business of residential general contractor work in Franklin County, Ohio.

3. Each action or inaction alleged here against Defendant is also an allegation of action or inaction by Defendant's agents, predecessors, successors, employees, contractors, assignees, and services, as appropriate.

4. On or about October 5, 2021, at the recommendation of a co-worker, Plaintiff Karthik Venkatesan sent a text message to Defendant Mark Koval, the owner/employee/agent of Defendant 614 Custom Homes, Inc., about renovating the basement in Plaintiff's personal residence, which is located at 6785 Margarum Bend, New Albany, Ohio 43054.

5. Through text message correspondence between Plaintiff and Defendant Mark Koval, the parties arranged for Defendant Mark Koval to come to the home of Plaintiff to discuss the basement renovation project for Plaintiff's personal residence.

6. On or about October 11, 2021, Defendant Mark Koval and/or other employees of Defendant came to the personal residence of Plaintiff to discuss the basement renovation project.

7. On or about October 13, 2021, Defendant Mark Koval and/or other employees of Defendant 614 Custom Homes came to the personal residence of Plaintiff a second time to discuss the basement renovation project.

8. On or about October 13, 2021, Plaintiff received an estimate from Defendants on 614 Custom Homes's letterhead stating the estimated cost for the basement renovation project that Defendant Mark Koval and/or other employees of 614 Custom Homes discussed with Plaintiff was $33,500.00. A $10,000.00 deposit was requested as part of the estimate. A copy of that Estimate has been attached hereto as **Exhibit A**.

9. On or around October 21, 2021, Plaintiff spoke with Defendant Mark Koval about the estimate dated October 13, 2021.

10. On or around October 24, 2021, Plaintiff requested that Defendant Mark Koval send him an updated estimate with the porch rails, steps, and rock wool insulation they discussed.

11. On or around October 31, 2021, Plaintiff received an invoice from Defendants on 614 Custom Homes's letterhead stating that the total cost for rock wool insulation and rails would be $3,700.00. It was also indicated thereon that the "tankless hot water heater would be installed by an outside plumber" who needed to come in and evaluate the space in order to provide accurate pricing thereon. A copy of that Invoice has been attached hereto as **Exhibit B**.

12. On or around November 1, 2021, Plaintiff received an invoice from Defendant on 614 Custom Homes's letterhead for $33,500.00. According to the invoice, a $10,000.00 deposit was required. A copy of that Invoice has been attached hereto as **Exhibit C**.

13. The estimate dated October 13, 2021 (**Exhibit A**), invoice dated October 31, 2021 (**Exhibit B**), and the invoice dated November 1, 2021 **(Exhibit C)** all state as follows:

a. "All refunds are processed within 30 days of the customer's request. If you have signed an agreement with 614 Custom Homes and asking for a refund due to canceling a job and materials have been purchased for your particular project[,] all refunds are subject to the product being refundable by the manufacture or supplier. All cancellation refunds will be dispersed within 30 days [o]f cancellation less any restoking fees or service charges for a return material. Refunds are less the total amount minus the subject to any labor that occurred and any expenses that have occurred for the project."

b.  "Once a[n] agreement and contract is agreed-upon if the customer chooses to cancel within the first 15 days of scheduling for the job 614 Custom Homes is not responsible for any loss of deposit once timelines and schedules have been added into place. Once a refund is agreed-upon 614 Custom Homes will have to option of returning the portion or all of the refund on a scheduled timeline. 614 Custom Homes does have the right of refusal and to recover any loss of money due to Time spent on job customer changing mind on scope of work. Any work that has been put into the project prior to starting as far as drawings estimates or any other loss of labor"

14. On November 1, 2021 and November 2, 2021, Defendant Koval texted Plaintiff about coming to Plaintiff's home to pick-up the $10,000 deposit reflected on the invoice dated November 1, 2021. (*See* **Exhibit C**).

15. On or around November 3, 2021, Defendant Koval sent Plaintiff a text message requesting to come over to Plaintiff's home to drop off all of his paperwork and to go over the project schedule.

16. On or around November 4, 2021, Defendant Koval came to Plaintiff's home. At that time, Plaintiff gave Defendant Koval a check in the amount of $5,000.00. This was the first payment towards the deposit on Plaintiff's basement remodeling project that was to be performed by Defendants. Defendants cashed that check later that same day. A copy of that check is attached hereto as **Exhibit D**.

17. On or around November 12, 2021, Defendant Koval came to Plaintiff's home. At that time, Plaintiff gave Defendant Koval a check in the amount of $10,000.00. This was the final payment towards the deposit on Plaintiff's basement remodeling project that was to be performed by Defendants. Defendants cashed that check later that same day. A copy of that check is attached hereto as **Exhibit E**.

18. On or around December 7, 2021, due to unforeseen family circumstances, Plaintiff contacted Defendants and requested to delay/cancel the basement remodeling project due to unforeseen family circumstances. Plaintiff also demanded that Defendants return to him the $15,000.00 deposit, as no work had been performed on the project at that time and Defendants had not given Plaintiff a schedule of work, blueprint, or otherwise at that time either.

19. At the time a refund was requested, Plaintiff had not signed the October 13, 2021 estimate (**Exhibit A**), the October 31, 2021 invoice (**Exhibit B**), or the November 1, 2021 invoice (**Exhibit C**).

20. On December 7, 2021, Defendant 614 Custom Homes acknowledged Plaintiff's request for a refund in writing. In that same email, Defendant 614 Custom Homes directed Plaintiff to sign the invoice/contract (**Exhibit C**) after Defendant 614 Custom Homes knew that Plaintiff intended to cancel the contract. Plaintiff complied with that request because Defendant 614 Custom Homes represented to Plaintiff that a signed contract was a condition precedent to Defendant 614 Custom Homes returning Plaintiff's $15,000.00 deposit to him. A copy of that email is attached hereto as **Exhibit F**.

21. On December 9, 2021, at the request of Defendant 614 Custom Homes, Plaintiff electronically signed the invoice dated November 1, 2021. (*See* **Exhibit C**).

22. Pursuant to the November 1, 2021 invoice signed by Plaintiff on December 9, 2021, Defendants were required to return Plaintiff's money to him within thirty days after Plaintiff requested a refund. (*See* **Exhibit C**).

23. Plaintiff was in communication with Defendants numerous times between December 9, 2021 and January 7, 2022 regarding the refund of Plaintiff's monies.

24. Defendants failed to refund Plaintiff as requested by January 7, 2022, thirty days from which Plaintiff initially demanded a refund.

25. On January 11, 2022, Defendant Mark Koval sent Plaintiff a photograph via text message of a check made out to Plaintiff in the amount of $1,500.00. Defendant Koval represented to Plaintiff that someone in Defendants' office had mistakenly issued the check in the amount of $1,500.00 instead of the $15,000.00 owed to Plaintiff. Defendant Koval told Plaintiff that he would "get this fixed" via text message that same day. A copy of that check—which is dated January 10, 2022—is attached hereto as **Exhibit G**.

26. Upon information and belief, it is believed that this $1,500.00 check was fraudulent.

27. On or around January 12, 2022, Plaintiff emailed Defendants again demanding that Defendants refund Plaintiff his entire $15,000.00 deposit by January 14, 2022.

28. On January 14, 2022, Defendant Mark Koval emailed Plaintiff to inform him that a check had been mailed out to Plaintiff earlier that week.

29. Plaintiff has made numerous attempts with Defendants to resolve this dispute regarding payment, to no avail.

30. Defendants never mailed any checks to Plaintiff, including the $1,500.00 check dated January 10, 2022.

31. To date, Defendants have issued no monetary refund to Plaintiff.

## COUNT ONE – BREACH OF CONTRACT

32. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully restated herein.

33. Defendants breached the terms of the October 13, 2021 estimate (**Exhibit A**) and November 1, 2021 invoice (**Exhibit C**) (signed by defendant on December 9, 2021), when Defendants failed to issue Plaintiff a full refund in the amount of $15,000.00 on or before January 7, 2022. Indeed, to date, Defendants have not issued a full refund of Plaintiff's deposit amount.

34. As a direct result of the above breaches, Plaintiff has been damaged in an amount to be determined at trial in excess of twenty-five thousand and 00/100 dollars ($25,000.00), plus pre- and post-judgment interest, costs, expenses, and attorney fees incurred herein.

## COUNT TWO: OHIO CONSUMER SALES PRACTICES ACT VIOLATIONS

35. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully restated herein.

36. The Ohio Consumer Sales Practices Act ("OSCPA") prohibits unfair, deceptive, and unconscionable practices in consumer sale transactions. R.C. 1345.02(A) and 1345.03(A).

37. At all times relevant herein, Defendants are and were **Suppliers** under the meaning of R.C. 1345.01(C) at all times relevant to this transaction in that they are engaged in the business of effectuating or soliciting consumer transactions in the form of personal service contracts and/or agreements.

38. At all times relevant herein, Plaintiff is and was a **Consumer** under the meaning of R.C. 1345.01(D).

39. The general contractor work Defendants agreed to perform in exchange for payment from Plaintiff was and is a **Consumer Transaction** under the meaning of R.C. 1345.01(A) at all times relevant herein. Plaintiff and Defendants engaged in "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

40. Specifically, R.C. 1345.02(B) finds the act or practice of a supplier in representing any of the following is **deceptive**:

> a. "That the subject of a consumer transaction ha[d] sponsorship, approval, performance, characteristics, accessories, uses, or benefits that it d[id] not have" R.C. 1345.02(B)(1); and
>
> b. "That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." R.C. 1345.02(B)(2).

Under the OCSPA, the following circumstances are also taken into consideration when determining whether an act or practice is **unconscionable**:

c. "Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement." R.C. 1345.03(B)(1);

c. "Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers" R.C. 1345.03(B)(2);

    c. "Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction." R.C. 1345.03(B)(3);

    c. "Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier." R.C. 1345.03(B)(5); and

    c. "Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment." R.C. 1345.03(B)(6).

41    It is also considered a deceptive act or practice for a supplier to charge for any service which has not been authorized by the consumer. See Ohio Adm. Code 109:4-3-05(D)(6).

42.    For the reasons stated herein, Defendants violated R.C. 1345.02 and/or 1345.03.

43.    The actions of Defendants described in this Complaint are unfair or deceptive acts or practices in violation of the OCSPA. (R.C. 1345.02).

44.    The actions of Defendants described in this Complaint are unconscionable consumer sales acts or practices in violation of the OCSPA. (R.C. 1345.03).

45.    The actions of Defendants described in this Complaint were committed with knowledge within the meaning of R.C. 1345.01(E).

46.    Plaintiff has been injured by the actions of Defendants described in this Complaint.

47.    As a direct and proximate result of Defendants' violations of the OCSPA, Plaintiff has been damaged in an amount not yet ascertained, but in excess of $25,000.00.

48.    Plaintiff is entitled to three times the amount of those damages from Defendants pursuant to R.C. 1345.09(B).

49.    Defendants are further liable to Plaintiff for $5,000.00, pursuant to R.C. 1345.09, and for Plaintiff's attorney's fees and costs of this action, pursuant to R.C. 1345.09(F), for each violation of the Ohio Consumer Sales Practices Act.

**COUNT THREE – HOME SOLICITATION SALES ACT**

51. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully restated herein.

52. The Home Solicitation Sales Act ("HSSA") pertains to the sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. (R.C. 1345.21(A).

53. Defendants are and were **Sellers** under the meaning of R.C. 1345.21(C) at all times relevant to this transaction.

54. Plaintiff is and was a **Buyer** under the meaning of R.C. 1345.21(D) at all times relevant to this transaction.

55. The home repair and/or home improvement services contracted for by the parties are and were **Consumer Goods or Services** under R.C. 1345.21(E).

56. Under R.C. 1345.22(A), the buyer has the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase (in addition to any right otherwise to revoke an offer). Additionally, R.C. 1345.23(A) mandates that any "home solicitation sale shall be evidenced by a written agreement or offer to purchase in the same language as that principally used in the oral sales presentation and shall contain the name and address of the seller. The seller shall present the writing to the buyer and obtain the buyer's signature to it. The writing shall state the date on which the buyer actually signs. The seller shall leave with the buyer a copy of the writing which has been signed by the seller and complies with division (B) of this section."

57. R.C. 1345.23(B) mandates that a Seller provide a Buyer with, among other things, written and clear notice of the Buyer's three-day-right to cancel the home solicitation sale contract.

58. R.C. 1345.28 provides that "Failure to comply with sections 1345.21 to 1345.27 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction in violation of section 1345.02 of the Revised Code."

59. For the reasons stated herein, Defendants violated R.C. 1345.23 because Defendants did not provide Plaintiff with written notice of his three-day-right to cancel the home solicitation sale contract in which Plaintiff entered.

60. Notwithstanding this failure, Plaintiff clearly notified Defendants of his intention to cancel the contract before Plaintiff signed any documents.

61. The actions of Defendants described in this Complaint were deceptive acts or practices in violation of the HSSA. (R.C. 1345.28).

62. The actions of Defendants described in this Complaint were committed with knowledge within the meaning of R.C. 1345.01(E).

63. Plaintiff has been injured by the actions of Defendants described in this Complaint.

64. Plaintiff's actual damages are equal to an amount to be determined at trial, in an amount exceeding $25,000.00.

65. Plaintiff is entitled to three times the amount of those damages from Defendants, pursuant to R.C. 1345.09(B).

66. Defendants are further liable to Plaintiff for $5,000.00, pursuant to R.C. 1345.09, and for Plaintiff's attorney's fees and costs of this action, pursuant to R.C. 1345.09(F), for each violation of the Home Solicitation Sales Act.

**COUNT FOUR – UNJUST ENRICHMENT**

67. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully restated herein.

68. By their acts and omissions as set forth herein, Defendants retained benefits which, in justice and equity, belong to Plaintiff, with knowledge of said benefits.

69. As a direct and proximate result, Defendants have been unjustly enriched and Plaintiff is entitled to an order of restitution.

70. Because the Defendants failed to appear or otherwise answer the state court complaint against Defendants, Plaintiff waived moving forward on damages for count four – Unjust Enrichment, and count five – Fraudulent Misrepresentation (See Judgment Entry and Magistrate's Decision Granting Default Judgment and Awarding Damages with Findings of Fact and Conclusions of Law, **Exhibit H**).

## COUNT FIVE – FRAUDULENT MISREPRESENTATION

71. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully restated herein.

72. Defendants have made various and numerous false representations and concealments of fact to Plaintiff. Specifically, after Plaintiff indicated to Defendants his intention to cancel the contract and ask for a refund, Defendants told Plaintiff that he needed to sign the contract in order for Defendants to process his refund.

73. Defendants' representation to Plaintiff was an affirmative false statement made with knowledge that the statement was false, and was made with the intent to mislead Plaintiff.

74. Plaintiff justifiably and reasonably relied upon Defendants' fraudulent misrepresentations and concealments of facts when he signed the November 1, 2021 invoice on December 9, 2021.

75. As a direct and proximate result of Defendants' fraudulent misrepresentations and concealments of fact to Plaintiff, Defendants are liable to Plaintiff for his actual damages to be determined at trial exceeding $25,000.00, punitive damages, attorney's fees, costs, and for such other relief as the court may deem just and proper.

76. Because the Defendants failed to appear or otherwise answer the state court complaint against Defendants, Plaintiff waived moving forward on damages for count four – Unjust Enrichment, and count five – Fraudulent Misrepresentation (See Judgment Entry and Magistrate's Decision Granting Default Judgment and Awarding Damages with Findings of Fact and Conclusions of Law, **Exhibit H**).

**COUNT SIX - NON-DISCHARGEABILITY OF DEBT, Section 523(a)(2) and (6) 54**

77. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

78. Section 523(a)(2) of the Bankruptcy Code provides that a discharge of the type the Defendant is seeking "does not discharge an individual debtor from any debt . . . for money, property, services . . . to the extent obtained by . . . (A) false pretenses, a false representation, or actual fraud."

79. Section 523(a)(6) of the Bankruptcy Code provides that a discharge of the type the Defendant is seeking "does not discharge an individual debtor from any debt . . . for willfully and malicious injury by the debtor to another entity or to the property of another entity."

80. Thus, there is no genuine issue of material fact. The money Koval took from Venkatesan is not a debt, but rather, it is stolen money, attained through fraud. Koval may not discharge the money he stole from Venkatesan through fraud.

**COUNT SEVEN -- PIERCING THE CORPORATE VEIL**

81. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

82. The applicable standard for piercing the veil was set forth by the Ohio Supreme Court in *Dombroski v. WellPoint, Inc.,* 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538 *and Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos. Inc.,* 67 Ohio St.3d 274, 275, 617 N.E.2d 1075 (1993).

83. To the extent there is any veil of corporate existence as it pertains to 614 Custom Homes, the veil should be pierced. The corporation is merely an alter-ego for Koval, the LLC's sole member, because:

a. the LLC was inadequately capitalized;
b. the LLC was insolvent at the time of the disputed act;
c. Koval, held himself out as personally liable for certain company obligations representing himself as personally responsible for the duties and obligations of the corporation

d. Koval siphoned funds or assets of the entity for personal expenditures or use;

f. there was a commingling of funds—both Koval's personal funds and other businesses owned and operated by Koval;

g. there was a disregard of company roles;

h. there was a disregard of company formalities;

i. whether there was a lack of company records, especially regarding claimed loans to or from the entity to be pierced;

j. there was a high degree of domination by the person to be held liable - where a company is a mere facade for the operations of the dominant member; and

k. Koval personally shared, along with his other businesses, a common office space, personnel, and other assets.

84.   Koval's conduct was intentional, malicious, and fraudulent according to his testimony at his 341 meeting and the findings of the Franklin County Court of Common Pleas. (See Exhibit H)

85.   Due to Koval's behavior as it relates to his corporate businesses, Koval cannot hide behind the corporate veil to escape personal liability for money he stole.

## REQUEST FOR RELIEF

Plaintiffs respectfully request the following relief: 1) A declaratory judgment, finding that the money stolen from Venkatesan is not a "debt" and not dischargeable in a chapter 7 bankruptcy. 2) A declaratory judgment, finding that Plaintiff may pierce the corporate veil is pierced as it relates to Koval and 614 Custom Homes Inc. 3) Any other relief as this Court deems appropriate.

July 17, 2023                                              Respectfully Submitted,

/s/ Karen E. Hamilton
Karen E. Hamilton (0064808)
*Attorney for Plaintiff*
2025 South High Street, Suite 1
Columbus, Ohio 43207
Phone: 614-443-7920
Facsimile: 614-443-7922
E-mail: karen@karenhamiltonlaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that a copy the foregoing **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO SECTION 523 OF THE UNITED STATES BANKRUPTCY CODE** was served (i) electronically on the date of filing through the Court's ECF System on all ECF participants registered in this case at the email address registered with the Court and (ii) by ordinary U.S. Mail on July 17, 2023, addressed to:

Mark Koval
1235 Fareharm Drive
New Albany, OH 43054

Mark Koval
7448 Tottenham Place
New Albany, OH 43054

614 Custom Homes, Inc
7448 Tottenham Place
New Albany, OH 43054

United States Corporation Agents Inc.,
Statutory Agent for 614 Custom Homes, Inc.
411 Wolf Ledges Parkway Suite 201
Akron, OH 44311

John W. Kennedy
Strip Hoppers Leithart McGrath & Terlecky
Attorney for Debtor
575 South Third Street
Columbus, OH 43215

    /s/ Karen E. Hamilton
    Karen E. Hamilton (0064808)